1  **WO**

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                       FOR THE DISTRICT OF ARIZONA

7

8   Paula L. Hubble,                    )    No. CIV-05-1383-PHX-MHM
                                        )
9            Plaintiff,                 )    **ORDER**
                                        )
10  vs.                                 )
                                        )
11                                      )
    Commissioner  of  Social  Security )
12  Administration,                     )
                                        )
13           Defendant.                 )
                                        )
14  _____)

15

16          Plaintiff Paula L. Hubble seeks judicial review of the Administrative Law Judge's

17  ("ALJ") decision denying her claim for disability insurance benefits.  42 U.S.C. § 405(g).

18                                   **I.**

19                          **Procedural History**

20          On November 26, 2002, Plaintiff filed an application for Disability Insurance Benefits

21  under Title II of the Social Security Act wherein she alleged an onset date of May 8, 2002.

22  Plaintiff's application was denied initially and on reconsideration.    Plaintiff requested a

23  hearing before an Administrative Law Judge ("ALJ").  After a hearing on July 19, 2004,  the

24  ALJ issued a decision on September 24, 2004, finding that Plaintiff was disabled within the

25  meaning of the Act as of November 24, 2003, but not before.  Plaintiff sought review of the

26  ALJ's decision.  The Appeals Council did not grant Plaintiff's request for review and the

27  decision became final.  Plaintiff commenced an action for review in this Court pursuant to

28  42 U.S.C. § 405(g).

1    Plaintiff timely filed a complaint for judicial review in this Court. (Doc.1). Defendant

2    has filed an answer and a certified copy of the transcript of record. (Doc. 10). Plaintiff has

3    filed a motion for summary judgment (Doc. 16) supported by a statement of facts (Doc. 17)

4    and memorandum of points and authorities. (Doc. 18). Defendant has filed a motion to

5    reverse and remand this case to the Social Security Administration (Doc. 25) supported by

6    a memorandum. (Doc. 26). Plaintiff has filed a response to Defendant's motion to remand.

7    (Doc. 27).

8                                          **II.**

9                               **Standard of Review**

10   This Court must affirm the ALJ's findings if they are supported by substantial

11   evidence and free from reversible legal error. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir.

12   1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence

13   as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

14   Perales, 402 U.S. 389, 401 (1971); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

15   In determining whether substantial evidence supports a decision, the Court considers

16   the record as a whole. Richardson, 402 U.S. at 401; Tylitzki v. Shalala, 999 F.2d 1411, 1413

17   (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court

18   cannot substitute its own determination. Young v. Sullivan, 911 F.2d 180, 184 (9th Cir.

19   1990). Where evidence is inconclusive, "questions of credibility and resolution of conflicts

20   in the testimony are functions solely of the [Commissioner]." Sample v. Schweiker, 694 F.2d

21   639, 642 (9th Cir. 1982). Therefore, if on the whole record before the Court, substantial

22   evidence supports the Commissioner's decisions, this Court must affirm. Hammock v.

23   Bowen, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C. § 405(g).

24   An ALJ determines an applicant's eligibility for disability benefits through the

25   following five stages:

26       (1)    determine whether the applicant is engaged in "substantial gainful
                activity";
27
         (2)    determine whether the applicant has a "medically severe impairment or
28              combination of impairments";

                                          - 2 -

(3)     determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4)     if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant is capable of performing his or her past relevant work;

(5)     if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)).  See 20 C.F.R. § 416.920. At the fifth stage, the burden of proof shifts to the Commissioner. Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

Defendant does not dispute that Plaintiff has properly exhausted the administrative remedies as required by 42 U.S.C. § 405(g) in order to invoke this Court's jurisdiction.  See Bass v. SSA, 872 F.2d 832, 833 (9th Cir. 1989).  This Court has the power to enter a judgment affirming, modifying, or reversing the Commissioner's decision with or without remanding this case for rehearing.  See 42 U.S.C. § 405(g).

### III.

### Background Facts

Plaintiff was 54years of age at the time of the ALJ's decision.  She has a tenth grade education.  Plaintiff described her impairments as spurs in neck, arthritis, lower back pain, and headaches. Her past relevant work included department store clerk, banking clerk, cashier, long distance operator, advertising salesperson, and delivery driver. Plaintiff had not engaged in gainful activity since the alleged onset date.

In 1998, Plaintiff experienced severe back pain.  An MRI revealed a disc protrusion at L5-S1 into the vertical aspect of the neural foramen on the left, and at L4-L5, a moderate, relatively broad based central and left sided disc herniation. A follow-up at the Arizona Spine Center confirmed Plaintiff's back pain.  On June 22, 1998, Plaintiff underwent microscopic L4-L5 disectomy secondary to the herniated nucleus pulposus.  Plaintiff then returned to work.

1    Plaintiff's back pain returned six months later.  On February 22, 1999, an MRI of the

2    lumbar spine revealed postoperative changes at L4-L5 and disc bulging with left disc

3    protrusion.  Plaintiff's pain allegedly progressed and on May 8, 2002 she stopped working

4    secondary to pain.   Plaintiff developed residual left L4 irritated radiculopathy, lumbar

5    degenerative joint disease, and cervical degenerative joint disease.  On November 13, 2002,

6    Plaintiff was treated by   Steven C. Boles, M.D., for cervical degenerative joint disease and

7    chronic pain.  On November 26, 2002, Plaintiff filed her application for Disability Insurance

8    Benefits alleging an onset date of May 8, 2002.

9    In December 2002 and in January 2003, Plaintiff was seen for degenerative joint

10   disease and chronic pain.  On March 13, 2003, Dr. Boles reported that Plaintiff can lift and

11   carry less than ten pounds, can sit and/or walk less than two hours in an eight-hour work day,

12   and can sit less than six hours in an eight-hour workday.  Dr. Boles noted that Plaintiff

13   suffered from L3-L4 and L4-L5 herniated disc with L4 radiculopathy, degenerative joint

14   disease involving the neck, and chronic pain.

15   In April 2003, Plaintiff was examined by Atul Patel, M.D. a physician under contract

16   with the Department of Economic Security. Dr. Patel noted that Plaintiff can occasionally

17   lift 20 pounds and frequently 10 pounds, and can stand or walk at least two hours in an eight-

18   hour day.  Dr. Patel determined that Plaintiff has degenerative spondylosis of significant

19   degree at C4-5 and C5-6.  Dr. Patel limited Plaintiff to sedentary work.

20   In May and June 2003, Plaintiff was seen by Dr. Boles for headaches and back pain.

21   In July 2003, Dr. Boles completed a medical source statement in which he stated that

22   Plaintiff is unable to sustain an eight-hour workday on a regular basis secondary to a

23   herniated disc at L3-L4 and cervical disc disease at C3-4 and C5-6.   Dr. Boles diagnosed

24   early transformed migraine headaches.  A September 8, 2003 CT of the lumbar spine showed

25   a mild annular disc bulge at L3-L4 with a possible left foraminal protrusion.  At L4-L5 there

26   was a diffuse annular disc bulge.  Degenerative facet arthropathy was noted in the lower

27   lumbar spine.

28

1    On September 22, 2003, Plaintiff was treated for dyesthetic pain down the lower
2    extremity.  Plaintiff remained unable to work and had difficulty with daily living.

3    The ALJ found that Plaintiff was disabled as of November 24, 2003 but not as of the
4    date she stopped work.

5    On January 15, 2004, Plaintiff was treated at the Pain Center of Arizona for
6    intervertebral disc disease.  Plaintiff was diagnosed with neuropathic pain.

7    A January 30, 2004 MRI of the lumbar spine showed moderately hypertrophic
8    ligamentum flavum at L3-L4 with narrowing of the central spinal canal and mild foraminal
9    narrowing, moderate bilateral posterior lateral bulging of the intervertebral disc at L4-L5
10   with moderately hypertrophic facet joints and ligamentum flavum.  On February 12, 2004,
11   Plaintiff was seen at the Pain Center of Arizona for neuralgia, neuritis, and radiculitis.
12   Plaintiff complained of ongoing chronic pain and received a steroidal injection.

13   In March 2004, Dr. Boles opined that there was no change in Plaintiff's restrictions
14   and limitations since his July 17, 2003 assessment.  In May 2004, Dr. Boles examined
15   Plaintiff and opined that she is suffering from chronic neuropathic pain and lumbar
16   radiculopathy.

17   On June 16, 2004, Plaintiff was seen by Dawn Riggs, Ph.D., a clinical pathologist
18   under contract with the Department of Economic Security.  Plaintiff's attention and
19   concentration skills were in the marginal to normal range.  Her working memory seemed
20   impaired and her intellectual functioning was borderline range.  Plaintiff demonstrated a
21   tendency to deny unfavorable human traits. Dr. Riggs diagnosed Plaintiff with a dysthymic
22   disorder (late onset) and borderline personality disorder traits. Dr. Riggs opined that Plaintiff
23   would likely not be able to respond in an emotionally controlled manner to most stress.

24   On June 28, 2004, Dr. Boles treated Plaintiff for persistent pain and tingling in the low
25   back and lower extremities.  Dr. Boles diagnosed Plaintiff with lumbar radiculopathy and
26   narcotic pain medications were prescribed.

27                                  The July 19, 2004 Hearing.

28
                                            - 5 -

1    Plaintiff testified that she cannot work due to back pain, difficulty sitting and walking,

2    leg pain, nerve damage, and depression. She testified that she stopped work due to

3    progressive back pain. Plaintiff explained that she is unable to go up and down stairs, can

4    walk, stand and sit approximately 10 minutes each. Plaintiff can lift approximately eight

5    pounds. Plaintiff cannot stoop or bend. Plaintiff had surgery in 1998 but the pain has

6    progressively increased. Plaintiff described her leg pain as like electricity shooting up and

7    down. Her pain increases or decreases depending on the weather.

8    The Vocational Expert ("VE") testified as follows regarding Plaintiff's past work: the

9    department store clerk position is considered light semiskilled, the hostess position is

10   semiskilled and light, bakery clerk is semiskilled and light, cashier is semiskilled and light,

11   long distance operator is semiskilled and sedentary, advertising sales is semiskilled and light,

12   delivery driver is light. The VE testified that customer service, and money handler are

13   sedentary jobs that require greater skill than unskilled jobs such as parking lot attendant,

14   cashier or parimutuel. Semiskilled cashier exists approximately 15,000 in the United States.

15   Bank tellers and customer service representatives are light. The VE testified in response to

16   a hypothetical question that someone with Plaintiff's limitations would not be able to perform

17   Plaintiff's past relevant work because of primarily standing. Plaintiff's skills would transfer

18   into sedentary work due to the physical restrictions outlined. If the hypothetical changed to

19   include simple instructions, that would eliminate semiskilled work. Plaintiff's limited ability

20   to respond to supervisors and co-workers would create a situation difficult to maintain. If

21   a person is unable to work an eight-hour day, that would preclude work.

22   The ALJ also asked the VE if he found Plaintiff's testimony credible would there be

23   jobs in the community. The VE answered no due to Plaintiff's pain scale which is moderate

24   to severe, her inability to sit, stand or walk for greater than ten minutes at a time, and her

25   emotional level. Plaintiff would need new skills to go from cashier type positions to

26   customer service representative.

27                              The ALJ's Conclusions.

28

1    The ALJ described the medical evidence, including the opinions of Dr. Boles, Dr.

2    Patel and Dr. Riggs.   The ALJ found that the Plaintiff had the following "severe"

3    impairments: degenerative joint disease and chronic pain but that Plaintiff did not have an

4    impairment or combination of impairments that met or equaled the criteria of any listed

5    impairment. The ALJ also found that Plaintiff had been diagnosed with a dysthymic disorder

6    and borderline/dependent personality disorder traits which have affected her general medical

7    condition.  These mental impairments prior to November 24, 2003 were not severe.  Only six

8    or seven months before Plaintiff's examination by Dr. Riggs did Plaintiff's condition begin

9    to significantly affect her ability to perform basic work activities on a sustained basis.

10   The ALJ found that the medical evidence and overall record prior to November 24,

11   2003 did not support Plaintiff's allegations of pain and disability.  Notes from Dr. Boles in

12   October 2003 showed that Plaintiff was "feeling improved" and that she had "adequate

13   psychological functioning."   The severity of Plaintiff's mental and physical impairments

14   since November 24, 2003 generally supported her subjective complaints, including

15   complaints of pain, depression and memory problems.

16   The ALJ assigned great weight to the medical opinions of Drs. Patel and Riggs as

17   supported by the great weight of the record evidence.  The ALJ concluded that prior to

18   November 24, 2003, Plaintiff had the residual functional capacity to perform a wide range

19   of sedentary work. The ALJ noted that the VE had testified that prior to November 24, 2003,

20   a hypothetical person with Plaintiff's age, education, vocational profile and assigned residual

21   functional capacity would be able to make a vocational adjustment to other work in the

22   national economy.  This work would include the semi-skilled sedentary job of cashier and

23   that the number of such jobs as exist in the Arizona and national economies is 7,500 to

24   500,000.  The ALJ concluded that from the alleged onset date through November 23, 2003,

25   Plaintiff was not disabled under the Social Security Act.  The ALJ then cited the VE's

26   testimony that the same hypothetical person as mentioned with a more limited mental

27   residual functional capacity as that of Plaintiff since November 24, 2003 would not be able

28

1   to perform any jobs in substantial numbers in the national economy.  The ALJ therefore

2   found Plaintiff disabled under the Social Security Regulations.

3                                              **IV.**

4                                         **Discussion**

5          Plaintiff has raised several grounds of error in her motion for summary judgment.

6   Plaintiff contends that the ALJ did not make detailed findings concerning her residual

7   functional capacity.  With respect to this issue, Plaintiff contends that she does not have

8   transferrable skills, the ALJ's decision does not contain a detailed rationale concerning

9   vocational issues, and the ALJ's finding conflicts with the provisions of the Dictionary of

10  Occupational Titles (DOT).  Plaintiff also contends that the ALJ did not perform a credibility

11  analysis and did not properly consider the opinion of her treating physician.

12         Defendant states that the Appeals Council has requested remand to an ALJ for further

13  development of the record, a new hearing and a new decision.  The Appeals Council will

14  direct the ALJ to obtain new vocational expert testimony, if warranted, to inquire about any

15  possible conflict between the VE's expert testimony and information in the DOT and provide

16  examples of jobs that Plaintiff can perform, and evaluate Plaintiff's subjective complaints in

17  accordance with Social Security Ruling (SSR) 96-7p.

18         Plaintiff has argued that the ALJ's findings based on the acceptance of the VE's

19  testimony that a person with her restrictions can perform work as a bank teller or utility

20  customer service representative is in conflict with the provisions of the DOT which describe

21  these positions at a greater skill and exertional level than that acquired by Plaintiff in her past

22  work. These positions are "light" which is in conflict with the ALJ's conclusion that Plaintiff

23  can perform sedentary work.

24         Defendant acknowledges that the ALJ determined that Plaintiff could perform a wide

25  range of sedentary work based on the report of Dr. Patel, a consulting examining physician.

26  Dr. Patel reported that Plaintiff was able to occasionally lift 20 pounds and frequently lift 10

27  pounds, stand/walk for two hours in an eight-hour day, sit for up to six hours in an eight-hour

28  day with change in position as needed, occasionally climb, balance, and kneel, frequently

                                              - 8 -

stoop and crouch, and never crawl. The ALJ accepted the VE's testimony that such an individual could perform work existing in significant numbers in the national economy, such as semi-skilled, sedentary cashiering jobs.  The VE gave as examples of cashiering jobs "bank tellers, customer service reps for the utilities."  Defendant acknowledges that these jobs are light exertional jobs, not sedentary jobs.  Defendant has requested remand because it is unclear from the VE's testimony whether these light jobs were the only jobs Plaintiff could perform or whether these jobs were in addition to other sedentary cashiering jobs. Defendant acknowledges that based on the corresponding DOT jobs of Teller and Customer Service Representative, it appears that Plaintiff would be precluded from performing either of these light occupations as described by the DOT.  Defendant further notes that the ALJ did not mention the job examples provided by the VE in his findings so it is unclear how the ALJ resolved the conflict between the VE's testimony and information contained in the DOT.

Plaintiff also has raised in her motion for summary judgment that the ALJ did not set forth sufficient reasons for rejecting her credibility regarding her pain and fatigue testimony. Plaintiff asks the Court to accept her testimony as true. In response to this argument, Defendant acknowledges that the ALJ discredited Plaintiff's subjective complaints based solely on lack of objective medical evidence to support her complaints.  Defendant concedes that such a finding is not in compliance with applicable regulations, rulings and case law. Defendant cites Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996), which discussed the following facts to be considered regarding whether to accept as credible the claimant's testimony as to the severity of her symptoms: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  Defendant contends that remand is appropriate because the ALJ, not this Court, is responsible for determining credibility and resolving conflicts in the testimony.  In Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir.

- 9 -

1    2003), the Ninth Circuit held that the court is not required to automatically credit improperly
2    rejected testimony.  It may be appropriate to remand for reconsideration of credibility
3    determinations as suggested in <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 348 (9th Cir. 1991).  <u>See</u>,
4    <u>Connett</u>, 340 F.3d at 876.

5         A remand for an award of benefits is appropriate where (1) the ALJ has failed to
6    provide legally sufficient reasons for rejecting evidence; (2) there are no outstanding issues
7    that must be resolved before a determination of disability can be made; and (3) it is clear
8    from the record that the ALJ would be required to find the claimant disabled if such evidence
9    is credited.  <u>Smolen</u>, 80 F.3d at 1292.

10        In this case, the ALJ found that Plaintiff has severe impairments consisting of
11    degenerative joint disease and chronic pain.  The medical evidence justifies this conclusion.
12    As Plaintiff has argued, Dr. Patel, the examining consulting physician, made a similar
13    finding.  Dr. Boles, Plaintiff's treating physician, came to the same or similar conclusion.
14    The medical evidence appears consistent.  It therefore was error for the ALJ to discredit
15    Plaintiff's pain and suffering testimony based on lack of objective medical evidence.
16    However, even if Plaintiff's testimony is deemed credited as true, and even if controlling
17    weight is afforded to the opinion of Dr. Boles, Plaintiff's treating physician, an outstanding
18    issue remains.

19        The ALJ found that prior to November 24, 2003, Plaintiff had the residual functional
20    capacity to perform sedentary work.  Plaintiff contends that because the ALJ limited Plaintiff
21    to no more than sedentary work and because she is between the ages of 50 and 55 as of the
22    alleged onset date, the controlling GRID is Rule 201.14.  The Rule states that an individual
23    is conclusively deemed disabled if she is unable to perform her past work, has a maximum
24    sustained work capability limited to sedentary work, and does not possess skills from her past
25    work that are transferrable to other sedentary jobs.  Applying this Rule, Plaintiff further
26    contends that if Plaintiff does not have transferrable skills, then assuming sedentary work,
27    she is conclusively deemed disabled.  Plaintiff then argues that her past work is that of clerk,
28    cashier, phone operation salesperson and driver, all semiskilled and performed at the light

1   level of exertion. Plaintiff further argues that the VE identified transferable skills of customer

2   service, money handler and cashier, and that these skills transferred to sedentary work at a

3   greater skill than that acquired by Plaintiff based on her past work.  Plaintiff therefore argues

4   that because her past work was semiskilled, the skills referenced by the VE would not easily

5   transfer to the higher skills of a bank teller and utility customer service rep. However, as

6   discussed above, it was error for the ALJ to adopt the VE's testimony regarding bank teller

7   and utility customer service rep because these are light exertional positions.  The record

8   therefore contains no evidence regarding whether Plaintiff has transferrable skills relevant

9   to sedentary work.  This issue remains outstanding and reluctantly, remand appears

10  appropriate.

11       On remand, the ALJ shall offer Plaintiff an opportunity for a new hearing and issue

12  a new decision.  The ALJ further shall (1) obtain new vocational expert testimony, if

13  warranted, and inquire about any possible conflict between the vocational expert's testimony

14  and information in the DOT, and provide examples of jobs the claimant can perform, if any;

15  and (2) evaluate the credibility of Plaintiff's subjective complaints in accordance with Social

16  Security Ruling 96-7p.

17       **Accordingly,**

18       **IT IS ORDERED** that Plaintiff's motion for summary judgment (Doc. 16) is denied.

19       **IT IS FURTHER ORDERED** that Defendant's motion to reverse and remand (Doc.

20  25) is granted.

21       **IT IS FURTHER ORDERED** that the Commissioner's decision to deny benefits for

22  the period of May 8, 2002 to November 24, 2003 is reversed.

23       **IT IS FURTHER ORDERED** that this cause and action are remanded to the

24  Commissioner for further proceedings as indicated in this Order.

25       **IT IS FURTHER ORDERED** that Judgment shall be entered consistent with this

26  Order.

27       DATED this 29th day of September, 2006.

28
                                                    Mary H. Murguia
                                           United States District Judge